United States District Court
Southern District of Texas
**ENTERED**
February 02, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT M. LOERA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00031 |
| | § | |
| KINGSVILLE INDEPENDENT SCHOOL | § | |
| DISTRICT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending is Defendant Kingsville Independent School District's ("Kingsville ISD") Motion for Summary Judgment to which Plaintiff Robert Loera has responded and Kingsville ISD has replied. (D.E. 46; D.E. 56 and D.E. 57). The parties were also permitted to file supplemental briefing related to new evidence of physical abuse as well as additional arguments related to damages, specifically the applicability of a recent Supreme Court decision, *Cummings v. Premier Rehab Keller, PLLC*. (D.E. 61 and D.E. 62); 142 S.Ct. 1562 (2022). Kingsville ISD requests the Court strike two newly filed affidavits submitted with Plaintiff's supplemental response under the sham affidavit doctrine, specifically Plaintiff's December 5, 2022 affidavit and the December 12, 2022 affidavit of Dr. Velda Vela-Trujuillo, Plaintiff's treating psychologist. (D.E. 62, Pages 2-3; D.E. 61-1 and D.E. 61-9). In response, Plaintiff has filed a Motion Requesting Oral Hearing to argue this issue. (D.E. 61, Pages 7-8 and D.E. 63).

1 / 31

Also pending is Plaintiff's Motion for Partial Summary Judgment to which Kingsville ISD has responded and Plaintiff has replied. (D.E. 49; D.E. 53 and D.E. 60).

For the reasons stated below, the undersigned recommends Kingsville ISD's Motion for Summary Judgment be **GRANTED** and Motion to Strike be **DENIED** (D.E. 46 and D.E. 62).  The undersigned further recommends both Plaintiff's Motion for Summary Judgment and Motion for Oral Hearing be **DENIED**.  (D.E. 49 and D.E. 63).

## I.      JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned United States Magistrate Judge for case management pursuant to 28 U.S.C. § 636.  (D.E. 37).

## II.     BACKGROUND

### A. PROCEDURAL BACKGROUND

On October 23, 2020, Plaintiff commenced this action in state court alleging that while he was a high school student attending H.M. King High School ("King") in Kingsville, Texas, he was sexually harassed by Defendant Gabriel Xavier Villarreal ("Villarreal"), a theater arts teacher at King.  (D.E. 1 and D.E. 1-2, Page 2).  After Plaintiff filed an amended petition asserting claims under federal law against Kingsville ISD, the case was removed to this Court on March 1, 2021.  (D.E. 1 and D.E. 1-2).

Plaintiff asserts two claims against Kingsville ISD: (1) discrimination under Title IX of the Education Amendments of 1972 and (2) violation of 14th Amendment due

process under 42 U.S.C. § 1983.  Plaintiff has moved to summarily grant his Title IX claim as to actual notice.  Kingsville ISD has moved to summarily dismiss both claims.

### B.  FACTUAL BACKGROUND

Villarreal was first employed by Kingsville ISD as a speech and theater arts teacher from 2009 until 2012.  Villarreal did not have a permanent teaching certificate for the State of Texas but was enrolled in an alternative certification program that provided probationary status for teaching.  (D.E. 46-2 and D.E. 49-2).  On September 14, 2010, Villarreal was placed on administrative leave pending an investigation related to inappropriate behavior with a student.  (D.E. 46-1, Page 12).[1]  After the investigation, Plaintiff was allowed to return to work on September 17, 2010.  (D.E. 46-3).[2]

Arnulfo Cuellar, a former King student, testified he had a sexual relationship with Villarreal beginning his sophomore year in 2009 and lasting until a few months after he graduated in 2011.  (D.E. 46-16, Pages 3, 4, 5 and 6 and D.E. 49-3, Pages 6, 7 and 10).  Cuellar testified he and Villarreal kept their sexual relationship a secret, having told no school officials he was in a romantic relationship with Villarreal.  (D.E. 46-16, Pages 3, 4, 5 and 6).  However, Cuellar testified that after he graduated, he and Villarreal "had an

---

[1] It was also noted that Villarreal did not have a valid teaching certificate and his probationary certificate had expired on August 17, 2010.  (D.E. 46-2 and D.E. 49-2).  He was instructed to reapply for his certificate and to provide a copy to Kingsville ISD.  (D.E. 46-2 and D.E. 49-2).

[2] No details about the alleged inappropriate behavior are provided in the materials before the Court. In a letter dated September 16, 2010 from Kingsville ISD to Villarreal, Villarreal was informed that he could return to work based on the results from a "preliminary investigation," the investigation may continue resulting in future action by Kingsville ISD and that the "results of the investigation are inconclusive at this time."  (D.E. 46-3).

apartment together" and "became public." (D.E. 49-3, Pages 8 and 10).  Villarreal testified that while he did have a sexual relationship with Cuellar, it began approximately a year after Cuellar graduated and at that time, they did not try to keep it hidden from the public. (D.E. 61-7, Pages 5-6).

On April 3, 2012, Villarreal was advised by the Kingsville ISD Interim Superintendent that he would be recommending to the Board of Trustees that Villarreal be terminated at the end of the current school year "based on the status of [his] certification" and Villarreal resigned in May 2012 as an alternative to being terminated.  (D.E. 46, Page 3; D.E. 46-4 and D.E. 49-1).

In 2015, Villarreal reapplied to Kingsville ISD and his references from June 2015 were positive, including one from the Superintendent of Bishop ISD, where he had been working after resigning from Kingsville ISD.  (D.E. 46-5).[3]  Dr. Carol Perez, Kingsville ISD's Superintendent, recommended Villarreal be hired.  (D.E. 46-15, Page 7; D.E. 49-5, Page 6; and D.E. 49-6, Pages 2-3).  Dr. Perez stated that prior to this recommendation, she spoke with the HR director, Sharon Michalk, and reviewed Villarreal's previous employment records, finding no evidence of any wrongdoing.  (D.E. 61-6, Pages 8-9).  She further testified she contacted Kingsville ISD's legal counsel who stated she had no history with Villarreal and Dr. Perez also stated she confirmed Villarreal's reference from Bishop

---

[3]Villarreal's references included: "[a]mazing young man; he is awesome and involved in everything.  He is at work early and leaves late; great at one act play.  He is a great educator." "He's young; very creative and has a great mind.  He is a team player.  He will do a great job in Theater Arts for KISD."  "Works well with students; did a great job.  He will be very involved where he is needed beyond his job description."  (D.E. 46-5).

ISD with Bishop ISD's assistant superintendent who gave him a "glowing" recommendation. (D.E. 61-6, Page 9). Ms. Michalk testified that Dr. Perez did not ask her to assist or conduct any investigation related to Villarreal before he was hired for the second time. (D.E. 61-8, Page 5).

Dr. Perez's recommendation was then considered by the Kingsville ISD Board of Trustees. (D.E. 61-4, Pages 2-3). Although Villarreal was then hired by Kingsville ISD, two of the six school board members voted against hiring him at the July 6, 2015 board meeting. (D.E. 46-14, Page 3-4; D.E. 46-15, Page 3 and D.E. 49-6, Page 4).[4] One of these board members, Lynn Yaklin, stated during her deposition that she voiced her concerns in a closed session and later voted against hiring Villarreal because she felt he should not be in a high school setting as she had heard rumors there were posts on social media about him attending parties where students were present, creating division among certain students, making inappropriate statements in class and having a previous inappropriate physical relationship with a student, Cuellar, after Cuellar graduated. (D.E. 46-14, Pages 4-9 and D.E. 49-4, Pages 5-7 and 9-10). She further testified that after Cuellar graduated, his relationship with Villarreal "was pretty well open game on social media" and they "were visible on social media as a couple" as she saw a screenshot of them "laying in bed." (D.E. 49-4, Pages 7 and 9-10). She also testified she had no personal knowledge of any

---

[4]While there is conflicting testimony regarding the total number of votes, either six or seven, the minutes of the meeting detail that the vote in favor of employing Villarreal was "4-2" and lists each of six board members' votes on not only Villarreal's employment but several others as well. (D.E. 61-2; D.E. 61-4, Page 3 and D.E. 61-5, Page 8).

sexual behavior by Villarreal with Cuellar while Cuellar was a student at King.  (D.E. 46-14, Pages 8-9 and D.E. 49-4, Page 10).  Another board member, Melissa Windham, stated during her deposition that she voted against hiring Villarreal because she saw a social media post from 2012 that Villarreal had engaged in an intimate relationship with Cuellar shortly after Cuellar graduated in 2011.  (D.E. 46-15, Pages 4-6 and D.E. 49-5, Page 8).  She further testified she "never knew if [it] was true" that Villarreal "had been involved in a sexual relationship with a student while he was a teacher at KISD the first time and while the student was a student at KISD" but after she saw the social media post she "believed…that could have happened."  (D.E. 46-15, Pages 7-8 and D.E. 49-5, Pages 9-10).  Windham further testified she voiced her concerns to Dr. Perez when she discovered the social media post.  (D.E. 49-5, Pages 7-8).  She also testified that she was not "aware of any situation or circumstance where Mr. Villarreal was engaged in a sexual relationship with a student while that person was a student at Kingsville ISD."  (D.E. 49-5, Page 10).[5] In an affidavit, another board member, Brandon Greenwood, who voted in favor of employing Villarreal, averred in an October 21, 2022 affidavit that at the July 6, 2015 meeting both Yaklin and Windham "brought up Villarreal's past inappropriate relationships with students including that Villarreal had, while he was teaching [at King], carried on an inappropriate relationship with a student" and that it was discussed that "Villarreal had been reprimanded for having an inappropriate relationship with a student

---

[5]Specifically, Windham stated she could not "confirm that…there was talk that it might have been happening , but I—there was nothing to validate that."  (D.E. 49-5, Page 10).

and that Villarreal had a history of inappropriate text messages with various students…showing up at students' parties where students present were ingesting alcoholic beverages…[and purchasing] gifts" for male students.  (D.E. 61-2 and D.E. 61-3). Greenwood further averred the board members also discussed that "Villarreal had a sexual relationship with one of his students and that within days of this student graduating from high school, Villarreal and the student publicly announced their relationship and moved in with one another."  (D.E. 61-3).  He also averred that no "investigation concerning the disturbing facts that were brought to the Board's attention" was conducted.  (D.E. 61-3). The minutes of July 6, 2015 meeting show Greenwood, along with three other board members, voted in favor of Villarreal's employment, while Windham and Yaklin voted against it.  (D.E. 53-6, Page 9 and D.E. 61-2).  Dr. Perez testified that none of these discussions Greenwood averred took place at the meeting actually occurred.  (D.E. 61-6, Pages 10-11).  Additionally, Greenwood later testified at his November 2, 2022 deposition that if he had firsthand knowledge of any abuse of a student, he would have reported it to the appropriate authorities.  (D.E. 57-2, Pages 4-5).  He further testified when asked if he had heard rumors or hearsay of Villarreal having a sexual relationship with Cueller while Cuellar was a student or if he had proof to verify that relationship that "it would be fair to say that I had heard that there was possibly that sexual inappropriate relationship" between Villarreal and Cuellar.  (D.E. 57-2, Page 5).

As a new employee, on July 8, 2015, Villarreal signed a Statement of Understanding of Kingsville ISD's Policy on Sexual Harassment agreeing to abide by the policy.  (D.E.

46-6).[6]  Further, Villarreal's new employee check list indicates Villarreal also viewed a sexual harassment video.  (D.E. 46-7).  The next year, on April 12, 2016, the assistant principal at King reprimanded Villarreal and directed him to refrain from inappropriate communications with students after he overheard Villarreal discussing who were the prettiest girls at school with several students.  (D.E. 46-8 and D.E. 49-7).  Later that year, on September 6, 2016, Villarreal was placed on administrative leave with pay pending an investigation after it was reported he attended a party where a minor student may have consumed alcohol.  (D.E. 46-9, D.E. 46-10; D.E. 49-8 and D.E. 61-6, Pages 7-8).  While the investigation revealed Villarreal had been invited to a birthday party by the parent of a former King student and there was "no specific evidence of inappropriate conduct with students in this particular situation," he was issued a directive on September 8, 2016, to use good professional judgment in similar situations in the future, to not attend private out of school functions involving students or their parents, to comply with Kingsville ISD Board Policy, to follow the Employee Standards of Conduct and to read the Teacher Code of Conduct.  (D.E. 46-10).

At his August 17, 2022 deposition, Plaintiff testified he first met Villarreal in the fall of 2017 during his junior year at King and that he gave Villarreal his phone number, along with several other students who were part of a group project in theater arts.  (D.E. 46-13, Pages 3-4 and D.E. 49-9, Pages 7-8).  He also testified that nobody knew he gave

---

[6]The policy stated a violation included "[a] district employee sexually harassing another employee, non-employee or student," and those who violated this policy may be disciplined or recommended for termination.  (D.E. 46-6).

his phone number to Villarreal, he never had any voice conversations with Villarreal and he texted Villarreal a "couple of times a week" for about two months.  (D.E. 46-13, Pages 4-5 and D.E. 49-9, Pages 8 and 12).  Plaintiff further testified nobody knew he was texting Villarreal and that he told no one he was having these text conversations.  (D.E. 46-13, Page 5 and D.E. 49-9, Page 8).  Plaintiff also testified Villarreal gave him a pair of shoes at school in Villarreal's classroom and then Villarreal later texted him, requesting "a picture of [his] private part" which Plaintiff did not immediately send.  (D.E. 46-13, Pages 5-6 and D.E. 49-9, Pages 8-9).  Plaintiff also testified Villarreal offered to give him gifts in exchange for photos, Villarreal gave him five or six other gifts in total, including cologne, a chain, two watches and sunglasses, by dropping them off at Plaintiff's house and that nobody knew about these gifts.  (D.E. 46-13, Pages 6-7 and D.E. 49-9, Page 9).  Additionally, Plaintiff testified that when he was 16, he sent approximately five explicit photographs to Villarreal and nobody knew about them.  (D.E. 46-13, Pages 7-8 and D.E. 49-9, Page 9).  Plaintiff further testified that he never had any inappropriate physical contact with Villarreal.  (D.E. 46-13, Page 8 and D.E. 49-9, Page 9).[7]  Plaintiff testified Villarreal told him he wanted to be in a relationship with him.  (D.E. 49-9, Page 12).  He also testified that he never told anybody from the school about his interactions and communications with Villarreal and that his mother discovered the texts described above in December 2017 after taking his phone away for receiving poor grades.  (D.E. 46-13,

---

[7]When asked, "Mr. Loera, did you ever have any inappropriate physical contact with Gabriel Villarreal?," he responded, "No, sir."  (D.E. 46-13, Page 8).

Pages 9-10 and D.E. 49-9, Pages 10-11).  Plaintiff testified he and his mother then had a meeting with the school board or superintendent and raised a complaint with the police and subsequently, Villarreal was no longer a teacher at King.  (D.E. 49-9, Page 11).  On December 7, 2017, Villarreal was placed on administrative leave with pay while an investigation into the actions at issue was conducted.  (D.E. 46-11).  Dr. Perez testified that as soon as Plaintiff's mother met with her regarding her concerns, the appropriate authorities were "immediately contacted," Villarreal "was immediately put on administrative leave and taken out of the classroom," and while investigating the allegations, Villarreal chose to resign.  (D.E. 61-6, Pages 13-14).  Villarreal then resigned on December 12, 2017.  (D.E. 46-12).  Villarreal testified that he chose to resign "[u]nder [his] own free will," not under any pressure but also due to "the allegations."  (D.E. 61-7, Pages 4, 10 and 12).

In his complaint and summary judgment motion, Plaintiff states Villarreal was subsequently arrested, indicted in April 2019 on four felonies and later pleaded guilty to four misdemeanors, three for online solicitation of a minor and the fourth for attempted possession of child pornography.  (D.E. 1-2, Page 5 and D.E. 49, Page 12).  However, no documents related to Villarreal's criminal case have been provided to the Court.

Plaintiff graduated from King in 2019.  (D.E. 49-9, Page 4).[8]  Plaintiff further testified that he had been treated by Dr. Vela two to three times a month from 2019 up until

---

[8]Plaintiff did switch schools during his junior year for several months but ultimately transferred back to King and finished both his junior and senior year there.  (D.E. 49-9, Pages 7-8 and 11).

two months prior to the August 17, 2022 deposition and that he had been diagnosed with depression and anxiety but had not been prescribed any medication. (D.E. 49-9, Page 12). Plaintiff testified that he had been advised by another medical provider to keep seeing Dr. Vela and that he had stopped seeing her "because I haven't scheduled anything yet." (D.E. 49-9, Page 12).

In his Supplemental Response to Defendant's Motion for Summary Judgment, Plaintiff included an affidavit he executed on December 5, 2022. (D.E. 61-1). Contrary to his deposition testimony that he never had "any inappropriate physical contact with" Villarreal, Plaintiff averred that in the fall of 2017 after he "thanked Mr. Villarreal for the shoes...he lunged at me and kissed me" while in Villarreal's classroom. (D.E. 46-13, Page 8 and D.E. 61-1). Plaintiff further averred that, "[o]n other occasions in class, Mr. Villarreal would attempt to give me hugs, put on makeup to get my attention, and rub parts of my body." (D.E. 61-1). He also averred that on another occasion, Villarreal texted him around midnight, asking him if he was hungry and then showed up at Plaintiff's house with food. (D.E. 61-1). Plaintiff averred he hugged Villarreal to thank him for the food and Villarreal then "placed his hand on my chest and ran it down my abdomen to my penis and groin area over my shorts. I recoiled [and] Mr. Villarreal left." (D.E. 61-1). Plaintiff further described several text messages where Villarreal texted him "let me give you head," "send me a picture of your d," "I wanna deepthroat your d and swallow your cum," and "I just want to give you head, I can do it better than your girlfriend." (D.E. 69-1).

Also in his Supplemental Response, Plaintiff included an affidavit from Dr. Vela executed on December 12, 2022. (D.E. 61-9, Pages 1-3). Dr. Vela averred that she began treating Plaintiff in 2019 and continues to treat him "helping him to learn how to deal with the trauma and aftermath he experienced as a result of being sexually abused by one of his teachers." (D.E. 61-9, Page 1). She further averred that Plaintiff had recently broken "through an emotional barrier [within the past two weeks] which triggered a lot of emotions…[and he] disclosed to me, that in fact, the sexual abuse he had suffered at the hands of his teacher did include physical touch. Robert told me for the first time that the abuse included an unwanted kiss and unwanted touching of his private parts." (D.E. 61-9, Pages 1-2). Dr. Vela also averred that "[i]t is common that disclosing details of abuse often takes time and unfolds as treatment progresses" and "it can often be difficult for victims to confront the abuse and disclose the extent of the abuse." (D.E. 61-9, Page 2). She further averred that "shame and embarrassment resulted in [Plaintiff] wanting to protect himself and shield himself from further ridicule and judgment" which "caused him to be less than candid about the extent of the sexual activities to which he was subjected." (D.E. 61-9, Page 2).

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The Court

must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses.  *Id*. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56; *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (Refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (Stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

13 / 31

*Anderson*, 477 U.S. at 248.  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56; *Anderson*, 477 U.S. at 248.  The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action.  *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

"Where there are cross-motions for summary judgment, the party bearing the burden of proof at trial must satisfy not only the initial burden of production on the summary judgment motion by showing that there is no genuine issue of material fact, but also the burden of persuasion on the claim itself by showing that it would be entitled to judgment as a matter of law at trial."  *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-cv-295, 2013 WL 6838864, at *2 (S.D. Tex. Dec. 27, 2013) (citing *Provenza v. Gulf South Admin. Serv., Inc.*, 67 F.Supp.2d 617, 619 (M.D. La. 1999)).  "Each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."  *Id.* (citing *Am. Int.'l Specialty*

*Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 6662 (5th Cir. 2012).  "If there is no genuine issue of fact and one party is entitled to prevail as a matter of law, the court may render summary judgment.  *Id*. (citing *Shaw Constructors v. ICF Kaiser Eng'r, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004)).

## IV.    TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

"Title IX states that no person 'shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.'"  *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020).  A school district receiving federal funds may be held liable under Title IX via a private action for damages when a teacher sexually harasses and abuses a student.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998).  However, Title XI does not create vicarious liability for the acts of a district employee.  *Id*. at 288.  A plaintiff may not recover damages under Title IX pursuant to the principles of respondeat superior or constructive notice.  *Id*. at 274-76.  In short, to recover damages from a school district for a teacher's sexual harassment and/or abuse of a student, a plaintiff must allege and prove that "(1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the abuse and (3) responded with deliberate indifference."  *Doe v. Katy Indep. Sch. Dist.*, 427 F.Supp.3d 870, 878 (S.D. Tex. 2019) (citation omitted); *Doe*, 964 F.3d at 358-59.  "[L]iability under Title IX arises not from the discrimination or harassment itself but from 'an official decision by the [funding] recipient

not to remedy the violation.'"  *Salazar v. S. San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 858 (5th Cir. 2017) (citations omitted).

Actual notice requires the plaintiff to establish that the school district knew of the "precise instance of abuse giving rise to the case at hand, or [had] actual knowledge of substantial risk that such abuse would occur."  *Doe*, 427 F.Supp.3d at 879 (citation omitted).  Title IX "requires the plaintiff to establish that the 'district actually knew that there was a substantial risk that sexual abuse would occur,'" not just that "the school district should have known there was a substantial risk of abuse."  *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020) ("Precedent from the Supreme Court and our court illustrates the difficulty of meeting this actual knowledge requirement.")

Further, to establish a school district's knowledge, the misconduct must be reported to an employee who "at a minimum has authority to institute corrective measures on the district's behalf."  *Doe*, 964 F.3d at 356 (quoting *Gebser*, 524 U.S. at 277).  "An employee has supervisory power if he or she is '(1) invested by the school board with the duty to supervise the employee and (2) had the power to take action that would end such abuse.'"  *Doe*, 427 F.Supp.3d at 878-79 ("Knowledge of teacher-student harassment by a school district employee who has no authority beyond reporting the misconduct to other school district employees is insufficient to expose the school district to Title IX liability.") (citations omitted)

Additionally, the school district with knowledge must also be deliberately indifferent to the abuse.  *Id*.  This is a "high bar" as the school district must be more than

negligent or unreasonable in its response.  *Id*. (citation omitted).  Rather, in each case whether the actions taken are reasonable varies and a "[s]chool district[] may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, even if the response is unsuccessful."  *Id*.  (citations omitted).

### A.    ACTUAL NOTICE

Plaintiff asserts he is entitled to summary judgment as to actual notice because Kingsville ISD hired Villarreal as a teacher for a second time "with full knowledge that during Villarreal's first tenure with KISD, he had carried on a sexual relationship with one of his students." (D.E. 49, Page 1).  Plaintiff then asserts that, "[a]s a matter of law, KISD's rehiring of Villarreal constitutes actual knowledge of discrimination in KISD's programs" making Kingsville ISD liable under Title IX.  (D.E. 49, Pages 1-2).

In contrast, Kingsville ISD asserts it is entitled to summary judgment on Plaintiff's Title IX claims because Plaintiff cannot show Kingsville ISD had actual knowledge Plaintiff was sexually abused or harassed.  (D.E. 46, Pages 8-13).  Kingsville ISD cites to Plaintiff's testimony that he never told anyone from school about his communications or interactions with Villarreal.  (D.E. 46, Page 9; D.E. 46-13, Pages 9-10).  Citing *Gebser*, Kingsville ISD further asserts Villarreal's previous conduct that occurred during his initial employment with Kingsville ISD does not establish that Kingsville ISD actually knew there was a substantial risk that sexual abuse would occur if he was rehired because Villarreal's conduct during his initial employment did not result in any complaints being filed with the school district that involved allegations of any sexual misconduct.  (D.E. 46,

Pages 10-12); 524 U.S. at 279. In *Gebser*, the Fifth Circuit upheld the district court's summary dismissal of the plaintiffs' Title IX claims against the school district where the school principal had received one complaint from parents that a teacher, who was later found having sex with a student, had made sexually suggestive comments in a class. 524 U.S. 278-79. (The Fifth Circuit determined the one complaint "was inadequate to raise a genuine issue on whether the school district had actual or constructive notice that [the teacher] was involved in a sexual relationship with a student"). The Supreme Court upheld the decision, determining that an educational institution cannot be said to violate Title IX based solely on principles of respondeat superior or constructive notice, "i.e., without actual notice to a school district official" of a teacher's sexual harassment of a student. *Id*. at 285. The Supreme Court determined that the actual notice standard had not been met because the information received by the high school principal, which "consisted of a complaint from parents of other students charging only that [the teacher] had made inappropriate comments during class," "was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student." *Id.* at 291 (Noting the school district terminated the teacher's employment upon learning of his sexual relationship with a student). Further, in *Kelly v. Allen Indep. Sch. Dist.*, the Fifth Circuit determined that an email from the plaintiff's father notifying a school district's board of trustees and superintendent that a middle school student had previously sexually assaulted another minor fell "far short of Title IX's stringent actual-knowledge standard" for notice of that student's possible future sexual harassment of others when "[t]here was

no indication that [the student] was acting out sexually or bullying his classmates." 602 F. App'x 949, 954 (5th Cir. 2015) (Affirming district court's summary dismissal "[b]ecause actual knowledge is a necessary element of a prima facie Title IX claim.")

In his Motion, Plaintiff cites to Cuellar's testimony that while he was a student, he had a sexual relationship with Villarreal and testimony from Dr. Perez as well as from several board members who had voiced concerns regarding Villarreal's relationship with Cuellar. (D.E. 49). In his response to Defendant's Motion, Plaintiff asserts that the actual notice requirement does not require notice of harassment of the student at issue, rather notice of a pattern and history of sexual harassment of other students is sufficient. (D.E. 56, Pages 14-15). Citing generally to Greenwood's affidavit and Yaklin's deposition testimony, Plaintiff argues "multiple members of the KISD Board had actual knowledge at all relevant times that during his first tenure with the district Gabriel Villarreal had committed statutory rape with a student. This evidence alone is sufficient to raise a fact issue concerning whether, when Villarreal was hired for a second time, KISD had actual notice of a substantial risk of abuse to students…[and] precludes summary judgment on KISD's actual notice argument." (D.E. 56, Page 16). In short, Plaintiff asserts that knowledge of Villarreal's previous relationship with Cuellar satisfies the actual notice requirement.

However, as noted by Defendant, the evidence in this case as described in detail above shows that at all relevant times at issue, Kingsville ISD, including its board members, knew for certain only that Villarreal engaged in a romantic relationship with

Cuellar after Cuellar graduated.  There is no competent evidence that anyone at Kingsville ISD knew for certain Villarreal and Cuellar had a relationship while Cuellar was a student. Instead, there were only rumors and conjecture.  Cuellar himself testified he and Villarreal kept their sexual relationship a secret until after he graduated.  Villarreal testified his sexual relationship with Cuellar began after Cuellar graduated and there is no evidence Villarreal ever discussed having an earlier relationship with Cuellar with others.  Windham, Yaklin and Greenwood all testified that they did not know for sure that Villarreal was inappropriately involved in a relationship with Cuellar when Cuellar was a student.  While Plaintiff relies on Greenwood's affidavit where he avers "Villarreal had a sexual relationship with [Cuellar] and that within days of [Cuellar] graduating from high school" they went public with their relationship and moved into together, Greenwood later clarified in his deposition testimony that if he had firsthand knowledge of any abuse of a student, he would have reported it to the appropriate authorities and that "it would be fair to say that I had heard that there was possibly that sexual inappropriate relationship" between Villarreal and Cuellar.  (D.E. 57-2, Pages 4-5).  The undersigned also notes Greenwood voted in favor of hiring Villarreal.  Further, there is no evidence that Villarreal's disciplinary actions during his initial employment involved allegations related to him being sexually inappropriate with any students.  Additionally, no evidence suggests Cuellar, or any other student prior to the Plaintiff, ever made allegations of any sexual harassment during Villarreal's years at Kingsville ISD or Bishop ISD.

There is no dispute that Kingsville ISD did not have actual knowledge of the "precise instance of abuse giving rise to the case at hand," namely Villarreal's sexual abuse of Plaintiff. *Doe*, 427 F.Supp.3d at 879. Plaintiff himself testified that he told nobody about it while it was occurring. There is also no dispute that Plaintiff was immediately suspended as soon as Plaintiff's mother reported it. Further, the undersigned recommends that suspicions, rumors and conjecture related to Villarreal's relationship with Cuellar while Cuellar was a student, while genuinely disturbing especially in light of his later conduct toward Plaintiff, are insufficient to establish that Kingsville ISD had actual knowledge of substantial risk that such abuse would occur by Villarreal against Plaintiff. The Fifth Circuit has declined to find actual knowledge in circumstances where the aggressor had a documented history of sexual assault. *Kelly*, 602 F. App'x at 954. The standard is that the district "actually knew that there was a substantial risk," not that it "should have known there was a substantial risk of abuse." *M.E.*, 840 F. App'x at 775 ("There may have been, as plaintiffs contend, 'red flags' that should have alerted the district of a substantial risk…[b]ut the law requires that the district actually knew of the risk, not just that it should have known.") (citation omitted). A school district "can escape liability if it can show that it did not know of the underlying facts indicating a sufficiently substantial danger and that it was therefore unaware of a danger, or that it knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 658-59 (5th Cir. 1997) ("[T]he official must both be aware of the facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") (citations omitted) (internal quotations omitted).  The undersigned recommends evidence showing actual knowledge is not in the record here.

Therefore, the undersigned recommends Plaintiff's "Motion for Partial Summary Judgment Concerning Actual Knowledge" be **DENIED**.  (D.E. 49).  Further, the undersigned recommends Defendant's Motion for Summary Judgment be **GRANTED** as to Plaintiff's Title IX claim.  (D.E. 46).

### B.    DELIBERATE INDIFFERENCE UNDER TITLE IX

In connection with Plaintiff's Title IX claim, the undersigned has also considered deliberate indifference as the second requirement.  Here, even if actual notice had been established, Plaintiff must also present evidence that Kingsville ISD's response rose to the level of deliberate indifference to succeed with his Title IX claim.  Kingsville ISD argues Plaintiff cannot show Kingsville ISD was deliberately indifferent to any complaint of discrimination.  (D.E. 46).  Rather, Kingsville ISD asserts (1) Villarreal was disciplined in both 2010 and 2016 for any known misconduct after investigations took place (2) prior to his rehiring, his records were reviewed and references were sought and verified; (3) once rehired, Kingsville ISD had Villarreal acknowledge its sexual harassment policy and had him watch a sexual harassment video; and (4) as soon as Kingsville ISD learned of Plaintiff's sexual abuse by Villarreal, Villarreal was immediately placed on administrative leave and then resigned.  (D.E. 46, Pages 12-13).

In response, Plaintiff asserts that when the Kingsville ISD board considered Villarreal's application in 2015, they did not conduct any sufficient investigation after being advised that "during [Villarreal's] first tenure he committed a felony by having sexual relations with one of his students." (D.E. 56, Page 23). However, as previously discussed, this mischaracterizes the evidence which demonstrates certain board members heard or thought there may have been an inappropriate relationship between Cuellar and Villarreal while Cuellar was a student, not that one took place. The only testimony was that at least one board member knew the two had been in a relationship after Cuellar had graduated. Villarreal and Cuellar dispute when the sexual relationship began. In short, the issue is whether Kingsville ISD responded reasonably to the rumor that Villarreal had an inappropriate relationship with Cuellar while Cuellar was a student prior to hiring Villarreal a second time.[9]

When faced with this rumor, Dr. Perez testified she investigated Villarreal by reviewing Villarreal's previous records, contacting legal counsel to see if she had a history with Villarreal and verifying his "glowing" recommendation from Bishop ISD before

_____

[9] Plaintiff cites to several cases in support of his argument that Kingsville ISD failed to sufficiently investigate the allegations against Villarreal related to Cuellar. (D.E. 56, Pages 20-23). However, the cases cited by Plaintiff did not assist the undersigned as they are clearly distinguishable from the facts here as in each cited case, there were repeated complaints to school officials of sexual misconduct made against the offending individual, whether it be a student or teacher, over a period of several months or even years that were ignored or mishandled. In short, there were decisions by those school officials, and accordingly those school districts, not to remedy the violations. *Gebser*, 524 U.S. at 290-91. Here, there were no such complaints made to Kingsville ISD against Villarreal, only conjecture years later that Villarreal had an inappropriate relationship with Cuellar when he was a student.

making her recommendation that he be hired again.  This is not ignoring the rumor, as alleged by Plaintiff.   While Plaintiff alleges Villarreal and Cuellar could have been questioned, the undersigned recommends the failure to do so, even if required, would sound in negligence, not deliberate indifference.  *Doe*, 427 F.Supp.3d at 878-79 ("Deliberate indifference is a 'high bar'" as the school district must be more than negligent or unreasonable) (citations omitted).   Further, no liability attaches under the deliberate indifference standard even if the reasonable response was later proven unsuccessful as it was here.  *Id*. (citations omitted).  "What makes a response or remedial action 'reasonable' depends on the facts of each case."  *Id*. at 879 (citation omitted).  "Title IX does not require flawless investigations or perfect solutions."   *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011) (citation omitted).

In short, the undersigned recommends there is no genuine issue of material fact as to both actual knowledge and to deliberate indifference and, accordingly, that Kingsville ISD's Motion for Summary Judgment be granted as to Plaintiff's Title IX claim and Plaintiff's Motion for Summary Judgment as to actual notice be denied.

## V.    42 U.S.C. § 1983

Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law, including the Fourteenth Amendment.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (citing 42 U.S.C. § 1983).  A plaintiff seeking § 1983 relief must show: (1) a violation of

the United States Constitution or a federal law; (2) and that the violation was committed by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A school district may not be held responsible for the acts of its employees under a respondeat superior theory of liability for the purpose of establishing a claim pursuant to § 1983. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). However, a school district may be liable under a deliberate indifference standard if the school district demonstrated deliberate indifference toward the constitutional rights of the student. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453-54 (5th Cir. 1994). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

In order to impose "municipal liability" on a school district under the official policy or custom scenario, a plaintiff must prove the existence of: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski*, 237 F.3d at 578-79 (citing *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 694 (1978)). "[I]solated, unconstitutional acts by municipal employees will almost never trigger liability." *Id.* at 578 (Consideration of the principles of municipal liability is integral in distinguishing individual violations by employees from actions of the governmental entity itself).

According to Plaintiff's Complaint and summary judgment briefing,[10] Kingsville ISD's liability is predicated on a violation of Plaintiff's due process right to bodily integrity.[11]   More specifically, Plaintiff alleges the complained of sexual abused occurred as a result of the conduct and deliberate indifference of Kingsville ISD and its officials by negligently rehiring Villarreal and, alternatively, having a "persistent, widespread practice" of minimizing or ignoring inappropriate behavior by teachers at King as evidenced by the "sham investigations" into Villarreal's misconduct.   (D.E. 1-2, Pages 7-8 and D.E. 61, Pages 4-19).[12]

---

[10]The undersigned notes that in his response to Defendant's Motion for Summary Judgment which seeks the dismissal of all claims against Kingsville ISD, Plaintiff did not address the dismissal of his 1983 claims, only Title IX.  (D.E. 56).  Therefore, he arguably abandoned his 1983 claims by failing to defend them in his response, similar to Plaintiff's assertion that Kingsville ISD should be precluded from raising any argument related to the *Cummings* case because it was raised for the first time in a reply.  (D.E. 61, Page 19).  However, the undersigned permitted the parties to submit additional briefing on both issues and therefore, any additional arguments will be considered.  (D.E. 59; D.E. 61 and D.E. 62).

[11]Kingsville ISD asserts Plaintiff has not established there has been a constitutional violation because Plaintiff testified that he never had any inappropriate physical contact with Villarreal and seeks to strike Plaintiff's newly filed affidavits averring to physical contact under the sham affidavit doctrine.  However, the undersigned recommends Plaintiff has provided a persuasive, satisfactory reason for the conflicting statements when considering Dr. Vela's affidavit and therefore, recommends Kingsville ISD's Motion to Strike these affidavits be **DENIED**.  Having made this recommendation, the undersigned further recommends Plaintiff's Motion for Oral Hearing on this issue be **DENIED**.

[12]In his Response and Supplemental Response, Plaintiff does not address the summary dismissal of any claims based on failure to train.  Therefore, the undersigned recommends these claims be dismissed and will not address them on the merits.  However, the undersigned notes Plaintiff has not produced evidence creating a material question of fact on this issue as Kingsville ISD's policies, provided to Villarreal, specifically prohibited his inappropriate conduct and directed employees to report it if observed.  (D.E. 46-6).

Kingsville ISD asserts there is no evidence that Kingsville ISD was deliberately indifferent in any of its investigations related to Villarreal.  Rather, Kingsville ISD asserts it investigated all complaints received related to Villarreal during his employment at King, a reference check was conducted before he was rehired which did not reveal any negative issues and the board deliberated his hiring because of rumors related to Villarreal and Cuellar's relationship but there was no definitive evidence of a sexual relationship between the two while Cuellar was a student.  (D.E. 46, Pages 17-18).

While Plaintiff again responds that Kingsville ISD was deliberately indifferent because "no investigation was conducted into the veracity of the concerns" about Villarreal's prior relationship with Cuellar, as discussed above, this mischaracterizes the evidence.  (D.E. 61, Page 14).  Dr. Perez did conduct an investigation into Villarreal's teaching and legal history and confirmed his recommendations from Bishop ISD. Additionally, as cited by Plaintiff, while Villarreal repeatedly testified he could not recall what became of certain investigations or letters he received when his behavior was censored during his employment at King, this is not evidence, as Plaintiff asserts, that Villarreal's "pattern of inappropriate grooming and predatory behavior, while observed and noted by campus and district officials, went unchecked and uncorrected."  (D.E. 61, Pages 15-17).  Plaintiff argues Kingsville ISD "has a custom and policy of willful blindness that ignores and encourages predatory grooming behavior, the plain consequences of which are the abuse of students such as Plaintiff at the hands of teachers such as Villarreal."  (D.E. 61, Page 19).  However, Plaintiff simply provides no evidence to support these assertions.

There is no evidence provided to the Court that prior to Villarreal's conduct at issue there was any complaint of sexual harassment in any of Villarreal's teaching or criminal records. There is clearly a dispute of material fact as to whether the sexual abuse Villarreal perpetrated on Plaintiff violated his constitutional rights but Plaintiff has not provided any evidence that Kingsville ISD's hiring policy was the "moving force" behind Villarreal's alleged unconstitutional actions. *Piotrowski*, 237 F.3d at 578-79; *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020) (As "§ 1983, like Title IX, does not impose liability on school districts for an employee's tort under a respondeat superior liability theory but only for their own illegal acts, to prevail against a public school district, a plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury.") (citations and internal quotations omitted). While the decision to rehire Villarreal without conducting further investigation regarding Villarreal's relationship with Cuellar may have been negligent, it was Villarreal's own conduct that was the cause of the violation and Kingsville ISD is not liable under a respondeat superior theory. *Id*. at 365-66 (A plaintiff "must show that the final policymaker had the requisite degree of culpability and that [the school district's] policies were the actual cause of the constitutional violation."); *Doe*, 153 F.3d at 219 ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference.") Therefore, the undersigned

recommends summary judgment be granted as to Plaintiff's § 1983 claims against Kingsville ISD.[13]

## VI.  DAMAGES

As the undersigned has recommended Kingsville ISD's Motion for Summary be granted as to Plaintiff's Title IX and § 1983 claims, the undersigned need not address the parties' arguments regarding damages, including the *Cummings* case.

## VII.  CONCLUSION

For the reasons stated above, the undersigned recommends Kingsville ISD's Motion for Summary Judgment be **GRANTED** and Motion to Strike be **DENIED** (D.E. 46 and

---

[13]In reaching this recommendation, the undersigned also considered Kingsville ISD's argument that Villarreal was not acting under color of law.  Citing *Becerra v. Asher* and *Doe v. Taylor Indep. Sch. Dist.*, Kingsville ISD also argues that even if there was physical injury, there is no evidence that Villarreal was acting under color of state law when he sexually harassed Plaintiff because there is no evidence Villarreal "used his position as a school teacher to allegedly violate Plaintiff's constitutional rights, i.e. [by] promis[ing] a better grade, let[ting] him skip class etc."  (D.E. 46, Page 15); 105 F.3d 1042, 1047 (5th Cir. 1997) (Concluding physical sexual abuse did not occur under color of state law because the assaults occurred at the teacher's home and not on school grounds, more than five months after the student had withdrawn from the school where the teacher taught, and the teacher's contact with the student was not part of his duties as a state employee or school-sponsored nor were they reported to any school official); 15 F.3d at 452 n. 4 (Finding a teacher was acting under color of state law where he took full of advantage of his position as a teacher to seduce a student by giving the student A's without doing any work in the classroom, speaking to another teacher about raising the student's grade in that class, kissing her after he coached the student in a basketball game and kissing and petting the student in a school lab room and fieldhouse).  The undersigned finds this argument to be without merit.  At all times during the abuse, Villarreal was Plaintiff's teacher.  Villarreal first acquired Plaintiff's telephone number because Plaintiff was enrolled in Villarreal's theater arts class and Villarreal then used this number to exchange sexual messages with Plaintiff.  Villarreal gave Plaintiff shoes at school, later requesting a picture of Plaintiff's private parts in return.  Further, Plaintiff averred Villarreal kissed him in Villarreal's classroom and would attempt to give him hugs and rub parts of his body at school.  (D.E. 61-1).

D.E. 62).  The undersigned further recommends Plaintiff's Motion for Summary Judgment be **DENIED** and Motion for Oral Hearing be **DENIED**.  (D.E. 49 and D.E. 63).

As stated by the Supreme Court, "[t]he number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience.  No one questions that a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher, and that the teacher's conduct is reprehensible and undermines the basic purposes of the educational system." *Gebser*, 524 U.S. at 292.  Plaintiff sustained despicable mistreatment at the hands of Villarreal and Villarreal has been criminally punished.  In making this recommendation, the undersigned does not minimize Plaintiff's suffering.  However, under the facts in this case, the undersigned recommends precedent dictates that Kingsville ISD is not liable under Title IX or § 1983 for Villarreal's shameful behavior.

ORDERED on February 2, 2023.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).